# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| **ALLEN L. NICKLASSON,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 03-8001-CV-W-GAF** |
| | ) | |
| **DONALD ROPER,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## ORDER

Petitioner seeks relief from his conviction of first degree murder for which he was sentenced to death under 28 U.S.C. § 2254. Because petitioner filed his habeas petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the provisions of AEDPA govern the resolution of the petition. *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1518, 146 L.Ed.2d 389 (2000). Under AEDPA, if a claim was adjudicated on its merits in state court, then petitioner is entitled to federal habeas relief only if he can establish that the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2).

Under § 2254(d)(1), a federal court may grant a writ of habeas corpus only if the state court reached a conclusion opposite to that reached by the Supreme Court on a question of law, decided the case differently than the Supreme Court has decided a case with a materially indistinguishable set of facts or unreasonably applied the governing legal principles to the facts of the petitioner's case. *Williams v. Taylor*, 120 S.Ct. at 1523. "Under § 2254(d)(1)'s unreasonable application clause . . ., a

federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 120 S.Ct. at 1522. "In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Id*. at 1523. AEDPA also requires federal courts to presume state court factual findings are correct, and places the burden on the petitioner to rebut that presumption by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).[1]

I.

Petitioner's first ground for relief is a contention that petitioner's due process rights were violated because the trial court declined to accept his plea of guilty at his November 21, 1994 arraignment. Petitioner presented this claim on direct appeal, and the Missouri Supreme Court found it was meritless. *State v. Nicklasson*, 967 S.W.2d 596, 604 (Mo. banc 1998).

The Missouri Supreme Court determined that petitioner's due process rights were not violated. The Missouri Supreme Court denied petitioner relief for two independent reasons:

> First, due process does not require the trial court to accept a guilty plea in a case that carries the potential for the death penalty until such time as the state has determined both the crime with which the defendant is charged and the extent of the punishment the state will seek. Indeed, § 565.005.1(1) requires an affirmative act by the state to waive the death penalty. Thus, the statutory presumption is that where first degree murder is charged, the death penalty is an option until that punishment is affirmatively waived by the state.

---

[1]Upon review of the record and applicable authority, respondent's position is found to be controlling. Much of respondent's brief is adopted without quotation noted.

Case 4:03-cv-08001-GAF   Document 32   Filed 04/26/05   Page 2 of 35

Of course, due process requires the state to make its punishment decision within a reasonable time prior to trial to give the defendant notice of the charges and aggravating circumstances against which he must prepare a defense. The eighty-two days the state took from filing the initial charge to filing its list of aggravating circumstances did not violate due process. This is because the trial did not occur until eighteen months after Nicklasson received notice of the state's list of aggravating circumstances. For these reasons, we believe that the statement in *North Carolina v. Alford*, 400 U.S. 25, 38, n.11, 91 S.Ct. 160, 167-68, n.11, 27 L.Ed.2d 162 (1970), that "[a] criminal defendant does not have an absolute right under the Constitution to have his guilty plea accepted by the court" extends to a case in which the state has not made a final decision to seek or waive the death penalty when the defendant attempts to enter a guilty plea.

Second, and more important, Nicklasson misreads § 565.005.1(1). As previously stated, § 565.005.1(1) requires an affirmative act by the state waiving the death penalty. Were we to remand this case to permit Nicklasson to plead guilty as things stood on November 21, 1994, the guilty plea would operate as Nicklasson's waiver of notice of aggravating circumstances and a willingness to accept the possibility of a death sentence. This is because the state had not affirmatively waived the death penalty as § 565.005.1(1) requires. We doubt Nicklasson seeks this result. In any event, the trial court did not err in refusing the proffered guilty plea.

*Id*. at 604-605. This determination by the Missouri Supreme Court that petitioner's claim was meritless is a reasonable one that is entitled to deference under 28 U.S.C. § 2254(d). Petitioner must demonstrate that the state court's decision is contrary to or involves an unreasonable application of United States Supreme Court precedent. Petitioner does not contend that the state court's decision is contrary to United States Supreme Court precedent. Moreover, petitioner does not contend that the state court's decision is an unreasonable application of Supreme Court precedent.

Petitioner does contend that he complied with Missouri Supreme Court Rule 24.02. However, whether the state court correctly interpreted that rule is not a federal constitutional issue that is cognizable under the court's limited jurisdiction. 28 U.S.C. § 2254(a). Whether the state court correctly resolved that contention does not state a ground cognizable in a federal habeas corpus

3

petition.  See *Estelle v. McGuire*, 502 U.S. 62 (1991) (state evidentiary law issue not cognizable in federal habeas corpus petition).  Petitioner is not entitled to habeas corpus relief under his first ground.

## II.

Petitioner's second ground for relief presents a number of allegations of trial court error during the voir dire process.  None of his contentions present a basis for habeas corpus relief.

Initially, petitioner complains that the trial court conducted the "death qualification" portion of the voir dire without allowing counsel to participate in the death qualification.  The Missouri Supreme Court rejected this contention on direct appeal.  See *State v. Nicklasson*, 967 S.W.2d at 611.  Petitioner does not suggest or demonstrate that the reasoning of the Missouri Supreme Court on this issue is contrary to or involves an unreasonable application of Supreme Court precedent.  28 U.S.C. § 2254(d); *Williams v. Taylor, supra*.  There is no Supreme Court authority requiring that attorneys ask the voir dire questions.  The state court's resolution is reasonable particularly in light of its previous precedent allowing the trial court to ask voir dire questions regarding capital punishment.  *State v. Ramsey*, 864 S.W.2d 320, 335 (Mo. banc 1993), *cert. denied*, 511 U.S. 78 (1994).

Petitioner next complains that when the trial court conducted voir dire, it improperly informed the venire panels about procedures in capital cases.  Petitioner complains that the jury was misinformed on a variety of issues.  The Missouri Supreme Court rejected petitioner's contention.  Initially, the Missouri Supreme Court articulated the introductory comments by the trial court to each venire panel.  *State v. Nicklasson*, 967 S.W.2d at 607 n.1.  The Missouri Supreme Court provided emphasis to the complained-of comments provided by the trial court to the panels.  *Id*.  The Missouri Supreme Court then determined that petitioner failed to preserve his claim because he did not brief it sufficiently on

4

direct appeal. *State v. Nicklasson*, 967 S.W.2d at 608. Given the Missouri Supreme Court's

enforcement of the procedural bar to review due to petitioner's failure to brief sufficiently, federal court

review of this aspect of the claim is barred absent a showing of good cause and actual prejudice under

*Murray v. Carrier*, 477 U.S. 478 (1986). Petitioner provides no allegations of cause and prejudice in

his petition.

Alternatively, the Missouri Supreme Court determined petitioner's claim was meritless for two

independent reasons. First, the Missouri Supreme Court determined that the statements by the trial

court were not erroneous. "First, the quoted portions of the trial court's comments refute most of his

assertions of error based on omission." *Id*. at 608. While petitioner contends that the jury did not

receive a definition of first degree murder, it did: "that is the intentional killing of another after

deliberation." *Id*. at 607 n.1. Similarly, the jury was informed properly about mitigation evidence in

that petitioner had the option of presenting such evidence. *Id*. at n.1. Secondly, the Missouri Supreme

Court found that any purported error was cured when the trial court gave proper instructions to the jury

at the guilt and penalty phase of trial. The Missouri Supreme Court's resolution of this issue is

reasonable and is entitled to deference under 28 U.S.C. § 2254(d).

Petitioner next complains that the trial court conducted insufficient questioning of the venire

panel concerning death qualification. Petitioner does not contend that any juror was actually biased.

Since the jury that actually sat was impartial, petitioner cannot demonstrate any prejudicial error. *State*

*v. Nicklasson*, 967 S.W.2d at 612-13. See 28 U.S.C. § 2254(e); *Wainwright v. Witt*, 469 U.S.

412 (1985) (applying statutory presumption of correctness to trial court's determination of bias.)

5

Petitioner does complain that the trial court did not ask enough questions during the death qualification process. The Missouri Supreme Court articulated the questions asked by the trial court. *State v. Nicklasson*, 967 S.W.2d at 610. The Missouri Supreme Court then reviewed the precedents from the United States Supreme Court. *Id*. at 610-11. Applying these decisions, the Missouri Supreme Court then found petitioner's contention was meritless. *State v. Nicklasson*, 967 S.W.2d at 611-12. The state court's resolution of this issue is a reasonable one that is entitled to deference under § 2254(d).

The state court's resolution of the issue is not contrary to Supreme Court precedent and petitioner does not so contend. The Missouri Supreme Court resolved petitioner's claim under the standards set forth in *Morgan v. Illinois*, 504 U.S. 719 (1992) and *Wainwright v. Witt*, 469 U.S. 423 (1985). Petitioner does not demonstrate that the state court's resolution is an unreasonable application of those precedents.

Petitioner also claims that the trial court did not allow him to voir dire the jury concerning diminished capacity. The Missouri Supreme Court found the contention was meritless because trial counsel was allowed to ask questions on the topic. *State v. Nicklasson*, 967 S.W.2d at 609. The court's resolution of this issue is a reasonable one that is entitled to deference. 28 U.S.C. § 2254(d). Petitioner does not contend that the circuit court's resolution of the issue is contrary to United States Supreme Court precedent. Nor does he contend that the state court's resolution is an unreasonable one. The state court's resolution is supported by the record. Petitioner's counsel was permitted to read the instruction regarding diminished capacity (MAI-CR3d 308.03) to the venire and ask if the

6

venire could follow it. Under these circumstances, petitioner cannot demonstrate that the state court's resolution that the petitioner's rights were not violated is an unreasonable one.

Finally, petitioner contends that the trial court erred by now allowing him to discuss petitioner's other murders with the jury. In particular, petitioner complains that the trial court did not allow voir dire questioning about whether potential jurors were unable to consider life imprisonment as a punishment upon hearing evidence that petitioner had committed two additional murders in Arizona. Petitioner defaulted upon this claim. Before the trial court, petitioner asserted that he should be allowed to ask voir dire questions about the two Arizona homicides and whether that would affect the jurors' guilt-phase determination. Petitioner wanted to ask "how many of you are concerned about your ability to put aside evidence of two additional murders when in this first part of the trial, you are being asked only to return Allen's mental state at the time of the shooting?" During petitioner's presentation to the claim to the Missouri Supreme Court, he claimed that he should have been allowed to discuss the two homicides vis-a-vis, their effect on guilt phase determinations. The Missouri Supreme Court found the claim was meritless as to the guilt phase issue present to it. *State v. Nicklasson*, 967 S.W.2d at 609; 28 U.S.C. § 2254(d).

In the federal habeas petition, however, petitioner changes his claim to a claim of error as to the penalty phase. Petitioner did not present this penalty phase theory to the Missouri trial and appellate courts. Consideration of the theory is barred by default in the federal habeas corpus proceeding. *United States v. Craycraft*, 167 F.3d 451 (8th Cir. 1999) (requiring identity of legal and factual theories; *Flieger v. Delo*, 16 F.3d 878, 884-85 (8th Cir. 1994) (claim defaulted unless same factual legal theory presented in state and federal court). For federal court review of petitioner's penalty phase

7

theory to occur, petitioner must demonstrate good cause and actual prejudice under *Murray v. Carrier, supra*. Petitioner does not do so in his petitioner.

In any event, petitioner's claim is without merit. The trial court inquired of the jury about whether it would automatically vote in favor of capital punishment. *State v. Nicklasson*, 967 S.W.2d at 610. The information about petitioner's other murders was certainly information the jury could consider at the penalty phase. See *Gilmore v. Armontrout*, 861 F.2d 1072, 1075 (8th Cir. 1988), *cert. denied*, 490 U.S. 1114 (1989). Petitioner fails to demonstrate any prejudice.

### III. - IV.

In his third ground, petitioner contends that the prosecutor's peremptory challenge of Yokley and McNeil were racially motivated in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). In his fourth ground, petitioner contends that the prosecutor violated petitioner's Fourteenth Amendment rights by striking Martin on the basis of gender. The trial court's determination that these peremptory challenges were not improperly motivated is a fact finding that is entitled to the presumption of correctness under 28 U.S.C. § 2254(e). *Purkett v. Elem*, 514 U.S. 765 (1995).

In resolving these issues, the Missouri Supreme Court referred to its prior precedent interpreting *Batson v. Kentucky, supra. State v. Nicklasson*, 967 S.W.2d at 613. At the *Batson* hearing before the trial court, the state indicated that it was striking Yokley because, during death qualification, she said she would probably return a life sentence and because "[s]he was one of the few that went that far to show favoritism towards one other [sic] personalities during that qualification process." In response, defense counsel suggested that venire person Floyd was similarly situated in that she "gave the same response." The trial court overruled the *Batson* challenge and upheld the state's

8

strike as racially neutral. The trial court's finding was affirmed by the Missouri Supreme Court. *State v. Nicklasson*, 967 S.W.2d at 613. The Missouri Supreme Court held that "[t]he state is entitled to make judgments about the strength of a particular venire person's commitment to the life-without-parole option, vis-a-vis, that of another venireperson whose words do not convey the same conviction." *Id*.

Petitioner also complains about the prosecutor's strike of venireperson McNeil. Petitioner contends venirepersons McNeil and Stark were similarly situated. The trial transcript reflects that McNeil was a black female, who worked for the Illinois Department of Family Services, having extensive contact with people involved in child abuse. The state expressed that it didn't want her to bring up her experiences in the jury room.

Petitioner argues that Lynn Stark, a white female, was a similarly situated juror. The court expressed the opinion that there was significant difference between the jobs of McNeil and Stark (a registered nurse) in finding the challenge of McNeil to be race neutral.

On appeal, the Missouri Supreme Court affirmed the decision of the trial court holding:

> Employment is a valid, race-neutral reason for exercising a peremptory strike. . . . A clinical nurse, Ms. Stark, specialized in child psychology; Ms. McNeil investigated child abuse cases. The two jobs are different.

*State v. Nicklasson*, 967 S.W.2d at 614. These determinations are entitled to deference under § 2254(d) and (3).

Finally, petitioner complains about the peremptory challenges of Martin on the basis that the prosecutor used a peremptory challenge against Martin because she was a female. The state informed the trial court that it struck Ms. Martin because she didn't say anything during the two days of general

9

voir dire, and the state "had no idea of her position on anything." *State v. Nicklasson*, 967 S.W.2d at 614.

The Missouri Supreme Court found this explanation to be gender neutral. *Id.* This determination is a reasonable one that is entitled to deference under § 2254(d) and (e). *Purkett v. Elam, supra.* The state's reason was on its face, a gender neutral one. Additionally, although petitioner did not make a formal record as to the gender of his jury, the names of the jurors reveal that there were nine women jurors who ultimately sat on his case. The record supports the state court's resolution of his issue.

V.

Petitioner next complains about the trial court's excusal of two jurors. The first juror's name is Fleece. After Fleece was called to be a juror, she became emotional and was excused from the jury. The court opined that Ms. Fleece looked like she was having a nervous breakdown and would not be able to proceed. The court noted that juror Fleece was "sobbing" and replaced her with an alternate.

The Missouri Supreme Court also found the venire person was biased and that she was unable or disqualified to perform her duty. *State v. Nicklasson*, 967 S.W.2d at 614 quoting § 494.485, RSMo. 1994. The Missouri Supreme Court concluded: "Given Ms. Fleece's inappropriate emotional response to news of her jury service, we find no abuse of discretion by the trial court's decision that she was unable to perform her duties as a juror and in replacing her with an alternate." *Id.* The trial court and the Missouri Supreme Court's determination are entitled to deference under § 2254(d) and (e). Those determinations are supported by the record.

10

Petitioner also complains about the excusal of Ms. Wozniak. Concerning Ms. Wozniak, the trial court made the following record: "Gentlemen, late yesterday afternoon I received the following note from a Dr. Craig Boyd concerning juror Christine Wozniak. She is subject to preterm labor, and the doctor does not want her to serve on the jury. The office has called again this morning." The court indicated that it would not remove Wozniak at that time. Later that day, the court made an additional record concerning this juror. The court indicated that, in addition to the letter from the doctor, he received a call from Ms. Wozniak's husband, who is a doctor, restating Dr. Boyd's concerns. The court then asked Ms. Wozniak whether she could sit on petitioner's jury.

> JUROR WOZNIAK: I honestly don't think that I can sit here for the next fourteen days. It's uncomfortable to sit here hour after hour. I have very bad veins. And I didn't mention this in my questionnaire. I really didn't think it pertinent at the time when you're called for jury duty.
>
> And it's just 99% of the population who gets called for jury duty doesn't probably get called for this kind of duty. And that's probably why I didn't bring that up before. But do I think I can sit here for fourteen days comfortably and be able to concentrate? I doubt it.

"[O]ut of abundance of caution," the trial court removed Wozniak. The circuit court's determination that this person was unable or disqualified to perform her duty as a juror is a reasonable determination that is entitled to deference under § 2254(d) and (e). *Patton v. Younst,* 467 U.S. 1025 (1984).

Not only does petitioner show no error by the trial court, he is also unable to show prejudice. While petitioner objected to the excusal of Fleece, during the strikes for cause following general voir dire, he had moved to excuse Fleece for cause. Fleece was then replaced by Wozniak, who was then replaced with the first alternate, Maxwell. Petitioner never moved to strike Maxwell for cause, during either the death qualification portion of voir dire or during the general voir dire, nor did he move to

11

strike her peremptorily. The second alternate juror did not deliberate in petitioner's case. Petitioner fails to show any prejudice.

VI.

Petitioner contends that the trial court erred because it did not allow petitioner to adduce certain evidence at the guilt phase. Petitioner contends that this evidence was admissible under § 552.015.2(8), RSMo. 1994. Congress, however, limits this court's jurisdiction to consideration of federal constitutional claims. The court has no jurisdiction to issue the writ of habeas corpus under 28 U.S.C. § 2254(a) only where petitioner demonstrates that he is "in custody in violation of the constitution or laws or treaties of the United States." *Id.* Whether the evidence was admissible under local statute such as § 552.015.2(8), RSMo. 1994, does not create a federal constitutional issue that is cognizable under the court's limited jurisdiction. *Estelle v. McGuire*, 502 U.S. 62 (1991). Petitioner seems to contend that his due process rights were violated by the exclusion of this evidence. Petitioner, however, does not demonstrate that he received a fundamentally unfair trial. *Id.*

Initially, petitioner contends that the trial court erred by excluding Defense Exhibits 189, 200-465. Later in the petition, petitioner suggests that the error only occurred because these materials were not submitted to the jury for review. The Missouri Supreme Court declined to review the claim because petitioner did not brief it sufficiently on direct appeal. The issue was not briefed sufficiently because petitioner did not provide specific argument for each of the exhibits; accordingly, he waived any claim of error for those exhibits for which he provided no specific argument. *State v. Nicklasson*, 967 S.W.2d at 616. For federal court review of the defaulted claims to occur, petitioner must

12

demonstrate good cause and actual prejudice under *Murray v. Carrier*, 477 U.S. 478 (1986). Petitioner does not do so.

In an alternative ruling, for the claims of error in relation to exhibits properly before the Missouri Supreme Court for review, the Missouri Supreme Court concluded that those documentary exhibits contained statements that were inadmissible hearsay. *State v. Nicklasson*, 967 S.W.2d at 616, citing *State v. Sutherland*, 939 S.W.2d 373 (Mo. banc), *cert. denied*, 522 U.S. 871 (1997). Some of the exhibits related to petitioner's mother, not petitioner, and were also cumulative to other evidence already before the jury. *Id*. at 616. The remaining exhibits that related to petitioner contained information that was already in evidence; thus, the Missouri Supreme Court concluded that they were cumulative. The merits decision by the Missouri Supreme Court is a reasonable one that is entitled to deference under 28 U.S.C. § 2254(d). Petitioner does not demonstrate that the state court's resolution of these issues is unreasonable.

Petitioner next complains that the trial court erred by declining to admit the testimony of David Simpson to show that Simpson thought Nicklasson needed long-term treatment in a structured setting. The Missouri Supreme Court found that the jury heard ample evidence of Nicklasson's long-standing mental problems and that the evidence Mr. Simpson would offer was already before the jury. *State v. Nicklasson*, 967 S.W.2d at 616-17. As a federal habeas corpus claim, the contention is not cognizable. Issues concerning the admission or exclusion of evidence are not cognizable under the court's limited jurisdiction. 28 U.S.C. § 2254(a); *Estelle v. McGuire*, *supra*. Second, the determination by the Missouri Supreme Court that the contention was meritless is a reasonable one that is entitled to deference under § 2254(d).

13

Petitioner also contends that the trial court should have admitted testimony from Bailey and Henry, two of petitioner's trial counsel. Bailey and Henry proposed to testify that they needed to work with and talk to petitioner to keep him focused on the trial because he was anxious and fidgety. The trial court did not allow this testimony and made this record:

> I feel compelled to respond, however, to what I believe is totally inappropriate testimony that the Court has received here today. The Court on the 28th of March, 1996, at the testimony that we had in regard to whether Mr. Nicklasson could cooperate with counsel, was able to judge Mr. Nicklasson in the courtroom without a jury present, was able to see his ability - - was able to hear him as he talked to counsel in a little more relaxed atmosphere.
>
> MR. BERRIGAN: Did you say you heard him as he talked to counsel Judge?
>
> THE COURT: I did.
>
> MR. BERRIGAN: Could you tell us specifically what you heard from Mr. Nicklasson ever say to counsel?
>
> THE COURT: Yes. He said he was tired of this shit. That's what I heard him say. And he repeated it again Monday night after the jury was gone as we were going out of the door over here. That's what he said.
>
> What I have observed is I have observed that when the jury is not here, Mr. Nicklasson has absolutely no trouble sitting up on the desk there or sitting up on the table here in front of the bench, seems to have no trouble communicating with either counsel or with three gentlemen, the service officers that have been with him for some eight days now.
>
> I have observed that at each recess as he walks by my chambers door he says hello to my clerk. And I believe that the record is just wholly inappropriate. It's not the kind of response that should be done. And what I've seen in the courtroom when the jury is not here in regard to the defendant and counsel, is that I believe that it's - - frankly, that the actions have looked to me like they're inappropriate for a courtroom in a case that's as serious as I think this case is.

After discussion with defense counsel, the court noted, "I've made a record now so that we all know and so that the appellate court can know that what I just heard was totally without any foundation from what I have been able to view for now going into the eighth day." The trial court concluded, "[s]o this feign we've controlled Mr. Nicklasson's emotions is just - - it's just not totally phony. It's phony testimony, Mr. Berrigan. It really is." The trial court properly excluded this testimony. That determination is entitled to deference under 28 U.S.C. § 2254(d).

The Missouri Supreme Court upheld the determination of the trial court, but for a different reason. At trial, the testimony of Bailey and Henry was proffered in rebuttal to a question asked by the government to Dr. Geffner, a defense witness. The Missouri Supreme Court noted that the trial court sustained the defense objection to the question. *State v. Nicklasson*, 967 S.W.2d at 617. Given the remedy provided by the trial court to the objected to question, the trial court did not abuse its discretion in declining to allow Bailey and Henry to testify on the subject. *State v. Nicklasson*, 967 S.W.2d at 617. This determination is also entitled to deference under 28 U.S.C. § 2254(d). Further, petitioner suffered no prejudice.

Petitioner complains that the trial court did not allow him to adduce testimony concerning his ability to deliberate from Drs. Geffner and Logan. The Missouri Supreme Court determined that the doctors' testimony was properly excluded.

> Both doctors based their opinions - - that his ability to deliberate was impaired - - on Nicklasson's voluntary substance abuse. Introduction of a voluntary drugged state to negate a culpable mental state is prohibited. Section 562.076.3, RSMo. 1994; *State v. Roberts*, 948 S.W.2d 577, 588 (Mo. banc 1997). A jury may not consider voluntary intoxication on the issue of a defendant's mental state.

*State v. Nicklasson*, 967 S.W.2d at 617.

Case 4:03-cv-08001-GAF   Document 32   Filed 04/26/05   Page 15 of 35

Petitioner is not entitled to federal habeas corpus relief. First, this contention concerns an issue of state evidence law, not an issue of federal constitutional dimension. 28 U.S.C. § 2254(a); *Estelle v. McGuire, supra*. Second, the Missouri Supreme Court's determination is a determination of state law that is binding on the federal court in its resolution of any federal issue. *Williams v. Armontrout*, 877 F.2d 1375, 1383 (8th Cir. 1989), *cert. denied*, 493 U.S. 1082 (1990). Third, the Missouri Supreme Court's determination is correct. The testimony of Dr. Geffner concerns the effect of petitioner's drug and alcohol consumption on petitioner. Similarly, Dr. Logan also testified about the effect of petitioner's substance abuse on petitioner's mental state. Under Missouri law, "[i]f the underlying mental condition does not result in diminished capacity without the drug, the presence of the drug does not change the evidentiary calculus." *State v. Roberts*, 948 S.W.2d 577, 589 (Mo. banc 1997). Accordingly, there was no error in the exclusion of the testimony in question. Fourth, petitioner can show no prejudice. Petitioner's capacity to deliberate is exhibited by his conduct during the killing in question. Additionally, petitioner argued in guilt phase closing argument that he could not deliberate. Petitioner presented a basis and argument to the jury to find no deliberation.

Petitioner complains that he was no allowed to present evidence concerning his mother's mental health. The Missouri Supreme Court found the contention was meritless. *State v. Nicklasson*, 967 S.W.2d at 616, 622. That determination is a determination of state law that is not reviewable in a federal habeas corpus proceeding. 28 U.S.C. § 2254(a); *Estelle v. McGuire, supra*. Second, the Missouri Supreme Court's determination that the evidence was inadmissible is entitled to deference under § 2254(d).

The evidence about which petitioner complains was from his mother's sister, Joyce Brausch. The information contained in that proposed testimony was irrelevant to the issue of whether petitioner was able to deliberate on the day of the murder. Nothing about petitioner's mother's mental health would be of assistance to the jury in understanding the relationship between petitioner's mental health and its effect on petitioner's ability to deliberate. The state court's determination was not unreasonable.

Petitioner finally makes some miscellaneous allegations of trial court error in the admission of evidence as follows:

(1) The trial court prevented the defense from cross-examining Dr. Richard Gowdy, a state's expert, with specific references from records that he was provided, which would have impeached his diagnosis of antisocial personality disorder.

(2) Mr. Nicklasson was further prevented from rebutting false testimony offered by the state. For example, Dr. Gowdy testified that the prominent scar on Allen Nicklasson's hand was due to a burn from a radiator. Dr. Logan, the defense expert, was not allowed to rebut this by presenting the fact that the scar is in fact a callous s a result of recurrent self-mutilation. This fact was supported throughout the records that the defense was not allowed to present.

(3) Another example of the court's disparate treatment was that the state was allowed to use a transcript from a competency hearing to cross-examine Dr. Logan, but defense counsel was not allowed to re-direct Dr. Logan on the differences between his opinion in the context of a competency hearing versus the opinion he was trying to offer to the jury.

17

(4) The trial court's refusal to allow Mr. Nicklasson to present a defense became an even more egregious error when the court failed to similarly restrict the state's presentation of evidence, and allowed several false impressions and facts to be left with the jury.

The Missouri Supreme Court found these contentions were meritless. *State v. Nicklasson*, 967 S.W.2d at 616, 622. First, the claims are not cognizable under the court's limited jurisdiction. 28 U.S.C. § 2254(a); *Estelle v. McGuire, supra*. Second, the Missouri Supreme Court's determination on these matters is entitled to deference under § 2254(d). Third, petitioner does not refer the court to a citation in the record on any of these matters supporting his allegations. Petitioner does not show error or prejudice.

VII.

Petitioner contends that the trial court erred by admitting into evidence his statement to FBI Agent McOmber. Initially, petitioner contends that during questioning, when he asked McOmber if he could stop at anytime and ask for an attorney, that constituted a request for counsel. The Missouri Supreme Court rejected that contention and found that the inquiry was merely one seeking clarification, not a request for counsel. *State v. Nicklasson*, 967 S.W.2d at 606 quoting *United States v. Thompson*, 866 F.2d 268, 272 (8th Cir. 1989). The state court's determination is not contrary to nor an unreasonable application of United States Supreme Court precedent. 28 U.S.C. § 2254(d). The Missouri Supreme Court could reasonably determine that petitioner's clarification of his right was not an unambiguous request for counsel. *Davis v. United States*, 512 U.S. 452, 458-59 (1994). Petitioner did not articulate sufficiently clearly a desire to have counsel present, that a reasonable police officer in the circumstances would have understood to be a request for an attorney. *Id*. Based on this

18

record, the Missouri courts could reasonably determine that petitioner did not unambiguously request the assistance of counsel. Accordingly, petitioner's statement was properly admitted at trial.

Petitioner also contends that his statement should not have been admitted because there were implicit promises of leniency if petitioner cooperated. The Missouri Supreme Court also rejected this contention as follows:

> However, we have reviewed the comments of Agent McOmber and find that they were, at most, encouragement to cooperate. McOmber told Nicklasson that he was interested in the truth, as were the courts, and that the courts were interested in whether suspects showed remorse or were cooperative. McOmber's statement contained no explicit or implicit promise of possible leniency. Encouragement to cooperate is far from a promise of leniency and does not, as a matter of law, render a confession involuntary.

*State v. Nicklasson*, 967 S.W.2d at 606 citing *inter alia Bannister v. Armontrout*, 4 F.3d 1434, 1440 (8th Cir. 1993), *cert. denied*, 513 U.S. 960 (1994). The Missouri Supreme Court's resolution of this issue was a reasonable one that is entitled to deference. 28 U.S.C. § 2254(d). The state court's determination has support in the record. Agent McOmber advised petitioner of his *Miranda* rights using a standard warning and waiver form; petitioner signed the waiver portion. Agent McOmber denied making any promises to petitioner. On cross-examination, Agent McOmber testified that he routinely told suspects that he was interested in the truth, as were the courts, and that the courts were also interested in whether suspects showed remorse and cooperation. The state court's resolution has support in the record.

## VIII.

Petitioner's eighth ground for relief is a contention that the trial court erred at the guilt phase by allowing the admission of evidence of other crimes. First, this contention is not cognizable under the

19

court's limited jurisdiction. 28 U.S.C. § 2254(a); *Estelle v. McGuire, supra*. Whether the trial court erred as a matter of law in the admission of evidence does not raise a cognizable ground for relief. *Id*. Second, the Missouri Supreme Court found this testimony was admissible. *State v. Nicklasson*, 967 S.W.2d at 616. The state court's determination is a reasonable one that is entitled to deference under § 2254(d).

Petitioner complains that evidence of burglary of the Merlin Smith home was error. Merlin Smith's stolen knife and his stolen pillow case were connected to petitioner and one of Smith's stolen guns was of a type that could have fired the shots in the murder in question and the two in Arizona. The burglary of the Smith home was relevant to show identity.

Evidence of a weapons offense in Huntington Beach, California, referred an "unspecified weapons offense" which did not constitute clear evidence associating petitioner with another crime or crimes. The referenced testimony related to chain of custody.

Next, a weapons offense from Mohave County, Arizona did not constitute evidence associating petitioner with another crime or crimes. As before, the witnesses testifying about the weapons offense from Mohave County merely testified regarding chain of custody issues.

Finally, concerning an unspecified offense in Randolph County and Biggs Forensic Units before, evidence of an "unspecified offense" does not equal clear evidence of another crime or crimes. Although petitioner does not provide a transcript cite, it appears he is referring to testimony by Dr. Gowdy in which he mentioned he examined petitioner by order of the Circuit Court of Randolph County. He also testified that, because of one instance of aggression at the Biggs Unit, petitioner was placed in seclusion. Dr. Gowdy did not associate petitioner with another crime or crimes.

20

The state court's resolution of these evidentiary issues has support in the record.

## IX.

Petitioner's ninth ground for relief is a contention that the trial court erred because the trial judge did not recuse himself. Petitioner contends that the trial judge exhibited bias by his rulings. The Missouri Supreme Court considered petitioner's claim and found it meritless. *State v. Nicklasson*, 967 S.W.2d at 605. The Missouri Supreme Court's determination is a reasonable one that is entitled to deference under § 2254(d). Petitioner contends that the evidence of bias can be found in the judge's ruling, but petitioner does not allege an extrajudicial source of bias against petitioner personally. See *Jones v. Luebbers*, 359 F.3d 1005, 1014-15 (8th Cir.), *cert. denied*, 125 S.Ct. 670 (2004).

In the rulings of which petitioner complains under this ground, the trial judge did not let either petitioner's counsel nor the prosecutor ask questions in the death qualification of voir dire because he did not know those counsel. Concerning the trial court's decision not to excuse a juror, the trial court disagreed with both petitioner's counsel and the prosecutor on the juror's qualification. Petitioner insinuates that the trial judge referred to the defense expert witnesses as "junk science." However, when the entire record is considered, the trial court's use of the phrase "junk science" refers to the need of trial courts generally to regulate the admission of expert testimony in order to regulate the quality of information heard by juries. This wisdom is accurate and does not show bias. The Missouri Supreme Court reasonably determined that petitioner did not demonstrate that the judge had an actual bias against petitioner or an interest in the outcome of this particular case.

## X.

21

Petitioner contends that the trial court erred at the guilt phase by allowing the prosecutor to make three arguments. First, petitioner complains that the prosecutor argued that it did not matter whether petitioner had a mental disease or defect. The Missouri Supreme Court declined to review this claim because petitioner failed to object. *State v. Nicklasson*, 967 S.W.2d at 615. The Missouri Supreme Court enforced the adequate and independent procedural bar to review by making a short plain statement that it declined review due to petitioner's failure to object. *Harris v. Reed*, 489 U.S. 255 (1989). Given this short plain statement of enforcement of the procedural bar, federal court review of the claim is barred absent a showing of cause and actual prejudice under *Murray v. Carrier, supra*. Petitioner declines to plead and demonstrate such in his petition with this claim. The second argument about which petitioner complains concerns the argument by the prosecutor that petitioner's mental state improved with treatment. The prosecutor's statement came in the state's rebuttal argument. After petitioner argued in his closing argument that he was like an abused puppy, the state countered that petitioner had shown improvement with treatment. The Missouri Supreme Court found that there were facts in evidence to support the state's argument. *State v. Nicklasson*, 967 S.W.2d at 615.

Petitioner does not demonstrate that the prosecutor's argument deprived him of a fundamentally fair trial. *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974); *Darden v. Wainwright*, 473 U.S. 928 (1985). The record supported the prosecutor's characterization that petitioner's condition improved as a result of treatment. The Missouri Supreme Court's resolution of this issue is reasonable and is entitled to deference. 28 U.S.C. § 2254(d).

Finally, petitioner complains that the prosecutor referred to the fact that petitioner was represented by counsel who presented a defense. The Missouri Supreme Court found nothing

Case 4:03-cv-08001-GAF   Document 32   Filed 04/26/05   Page 22 of 35

improper with the prosecutor's statement. *State v. Nicklasson*, 967 S.W.2d at 615. The state court's resolution of the issue is a reasonable one that is entitled to deference. 28 U.S.C. § 2254(d). Review of the transcript reflects that the prosecutor did not suggest that petitioner's counsel was fabricating the defense. The state began by discussing petitioner's diminished capacity defense and, following petitioner's objection, noted that the suggestion was not that the defense counsel fabricated a defense, but, rather, that notwithstanding evidence of petitioner's alleged mental deficits, those deficits were not operating on the date in question.

XI.

Petitioner next complains about the admission of State's Exhibits P4 and P7 because there was an insufficient chain of custody. This claim is not cognizable under the court's limited jurisdiction. 28 U.S.C. § 2254(a); *Estelle v. McGuire, supra*. The federal constitution does not create a separate federal constitutional code of evidence. *Romano v. Oklahoma*, 512 U.S. 1 (1994). A contrary determination would run afoul of the non-retroactivity principles of *Teague v. Lane, supra*.

In reviewing the claim, the Missouri Supreme Court determined there was sufficient evidence to establish a valid chain of custody for Exhibits P4 and P7. *State v. Nicklasson*, 967 S.W.2d at 617. The Missouri Supreme Court's determination is a reasonable one that is entitled to deference under § 2254(d). *Id*.

Petitioner also contends that he is entitled to a new guilt phase because of comments made by the trial court to the jury. Petitioner contends that these comments "violated the constitution." Petitioner provides no legal theory for his argument. On direct appeal to the Missouri Supreme Court, petitioner's theory was based on *Caldwell v. Mississippi. State v. Nicklasson*, 967 S.W.2d at 618

23

citing *Caldwell v. Mississippi*, 472 U.S. 320 (1985). If petitioner's theory in the federal habeas petition is something other than *Caldwell*, the theory is defaulted because it was not presented to the Missouri state courts. *Flieger v. Delo*, 15 F.3d at 884-85. If petitioner's theory is based on *Caldwell*, then review of that theory is barred by the non-retroactivity principles of *Teague v. Lane, supra*. The *Caldwell* decision applies only to penalty phase issues, not guilt phase. Furthermore, the Missouri Supreme Court correctly determined that the judge's comments did not lessen the jurors' sense of responsibility. "Instead, the trial court suggested that the jurors bore a grave responsibility and that they should focus on fulfilling that responsibility without regard to considerations of events that might follow." *Id*. at 618. This analysis is reasonable and is entitled to deference under § 2254(d).

## XII.

Petitioner's twelfth ground for relief is a contention that the trial court erred by submitting the "reasonable doubt" jury instruction at the guilt and penalty phases of trial. Petitioner contends that the jury instruction undermined the government's burden of proof. First, petitioner is inviting the court to create and apply a new rule of federal constitutional law in violation of the non-retroactivity principles of *Teague v. Lane, supra*. Second, the Missouri Supreme Court rejected petitioner's claim. *State v. Nicklasson*, 967 S.W.2d at 622. That determination is a reasonable one that is entitled to deference under § 2254(d). That determination is accurate. *Harris v. Bowersox*, 184 F.3d 744, 750-51 (8th Cir. 1999), *cert. denied*, 528 U.S. 1097 (2000); *Hall v. Luebbers*, 341 F.3d 705, 720 (8th Cir. 2003), *cert. denied*, 124 S.Ct. 2031 (2004).

## XIII.

24

Petitioner presents multiple allegations that the trial court erred by excluding proffered mitigating evidence.

Petitioner contends that the trial court should have allowed petitioner to present certain evidence about his mother. The Missouri Supreme Court found the evidence in question was irrelevant because it related to petitioner's mother, not petitioner. "None of this evidence bore a direct relevance to Nicklasson's own character, his previous criminal record, or the circumstances of the crime. *Lockett,* 438 U.S. at 604, n.12, 98 S.Ct. 2964-65, n.12. The trial court did not err in refusing to admit additional, irrelevant evidence." *Id*. at 621. The Missouri Supreme Court noted the volumes of evidence admitted at the penalty phase about petitioner's mother. *Id*. at 620. The Missouri Supreme Court's conclusion that the trial court did not err in declining to admit this evidence is reasonable. 28 U.S.C. § 2254(d).

The Missouri Supreme Court's determination that the evidence does not relate to petitioner's character, his prior record or the circumstances of his offense is correct. The Missouri Supreme Court also reasonably concluded that petitioner showed no prejudice given the other information adduced about his mother.

Petitioner contends that Exhibit 283 should have been admitted. Exhibit 283 was not among the five exhibits preserved by petitioner for review. *State v. Nicklasson*, 967 S.W.2d at 620. Petitioner declines to show good cause and actual prejudice to overcome his default as required by *Murray v. Carrier, supra*. Exhibit 283 included testimony that petitioner's mother had lied to him by telling him that she had killed his father. Petitioner also suggests that he should have been allowed to present certain evidence that his mother behaved bizarrely in his presence. There was evidence

25

presented that petitioner's mother was a liar, had physically attacked her husband and her mother, as well as her abuse of petitioner, her intimate exploits and other significant negative behavior. *State v. Nicklasson*, 967 S.W.2d at 620. The Missouri Supreme Court's conclusion on this issue is reasonable and has support in the record.

Petitioner complains that there was not testimony about his father abandoning him at birth. The Missouri Supreme Court found that there was such testimony, even though it was irrelevant. *State v. Nicklasson,* 967 S.W.2d at 621. The Missouri Supreme Court was correct. 28 U.S.C. § 2254(d).

Petitioner claims that the trial court did not admit evidence of his mother's sterilization after his birth. The Missouri Supreme Court found the evidence irrelevant under *Lockett*. *State v. Nicklasson*, 967 S.W.2d at 619. The Missouri Supreme Court also found that the trial court admitted that evidence. *Id*. at 619-20. The Missouri Supreme Court's analysis of the issue under *Lockett* is entitled to deference under § 2254(d). That analysis is accurate. *Lockett v. Ohio,* 438 U.S. at 604 n.12.

Petitioner contends that he should have been allowed to present evidence that he had attempted to plead guilty before trial. The Missouri Supreme Court correctly concluded: "The record does not support his assertion that he was willing to plead guilty when the death penalty remained an option." *State v. Nicklasson*, 967 S.W.2d at 621. That conclusion is supported by the record. Petitioner points to no part of the record showing that he offered to plead guilty once the state's notice of aggravating circumstances had been filed.

Petitioner contends that the trial court erred because it did not allow petitioner to show his hand to the jury. The Missouri Supreme Court found no error and no prejudice because the injury on the

Case 4:03-cv-08001-GAF   Document 32   Filed 04/26/05   Page 26 of 35

hand had already been testified to by witnesses. *State v. Nicklasson*, 967 S.W.2d at 619; 28 U.S.C. § 2254(d). The Missouri Supreme Court's conclusion has support in the record.

Petitioner complains that the trial court erred by failing to show a photograph of petitioner holding a beer can next to the man he believed to be his father. The Missouri Supreme Court found the information in the photograph redundant with other information presented to the jury. *State v. Nicklasson*, 967 S.W.2d at 620. The Missouri Supreme Court's conclusion is entitled to deference under § 2254(d). The conclusion is accurate given the evidence of substance abuse presented by petitioner at the penalty phase. The Missouri Supreme Court's conclusion that the photograph was cumulative with other evidence of abuse is also supported by the record.

Petitioner complained that the trial court did not admit evidence that the state had previously argued that Skillicorn was the ring leader of the murders. The Missouri Supreme Court correctly pointed out closing argument from another case is not evidence. *State v. Nicklasson*, 967 S.W.2d at 621. That determination is a reasonable one. See MAI-CR3d 302.02 (parties' arguments not constituting evidence). 28 U.S.C. § 2254(d).

Petitioner next contends that the trial court should have admitted testimony from the art therapist who would have concluded that petitioner's drawing showed his enormous emotional problems. The Missouri Supreme Court concluded that the trial court properly found that this evidence was cumulative. *State v. Nicklasson*, 967 S.W.2d at 619. The Missouri Supreme Court's resolution of this issue is entitled to deference. 28 U.S.C. § 2254(d).

Finally, petitioner contends that the trial court should have admitted evidence that petitioner's relative would visit him in prison. The Missouri Supreme Court found the information irrelevant. *State*

27

*v. Nicklasson*, 967 S.W.2d at 619. That analysis is correct under *Lockett* since that information does not concern petitioner's character, prior record or the circumstances of the offense. *Lockett v. Ohio*, 438 U.S. at 604 n.12. The state court's determination is reasonable and entitled to deference. 28 U.S.C. § 2254(d).

XIV.

Petitioner complains that the jury heard evidence of petitioner's other crimes at the penalty phase. The Missouri Supreme Court found that this was proper under *Gregg v. Georgia*, 428 U.S. 153 (1976). In *Gilmore v. Armontrout*, 861 F.2d at 1072, the court of appeals found it proper for the state to introduce evidence of Mr. Gilmore's other murders at the penalty phase. That is because information about the petitioner's character is admissible at the penalty phase. *Id*. citing *Gregg v. Georgia, supra*. A contrary determination would run afoul of the non-retroactivity principles of *Teague v. Lane, supra*. The Missouri Supreme Court's determination is reasonable and entitled to deference. 28 U.S.C. § 2254(d).

Petitioner contends that his due process rights were violated by the Missouri Supreme Court's proportionality review of his sentence. Petitioner is not entitled to relief on this ground.

First, petitioner did not present this claim on direct appeal to the Missouri Supreme Court or in his post-conviction litigation. Petitioner's failure to present the claim to the Missouri state courts constitutes default that precludes state and federal court review of the claim. *Sweet v. Delo*, 125 F.3d 1144, 1149-50 (8th Cir. 1997), *cert. denied*, 523 U.S. 1010 (1998). Petitioner declines to plead good cause and actual prejudice in his petition. Federal court review of the claim is barred.

Second, petitioner is requesting the court to develop and apply new law in violation of the non-retroactivity principles of *Teague v. Lane, supra*. Petitioner does not articulate a United States Supreme Court decision that dictates the grant of relief with petitioner's claim concerning state court proportionality review.

29

Petitioner's next ground for relief is a contention that his Sixth Amendment rights were violated because the jury did not find the elements necessary to impose capital punishment. Petitioner relies upon the Supreme Court decision in *Blakely v. Washington*, 124 S.Ct. 2531 (2004). Petitioner is not entitled to relief on this ground. First, petitioner defaulted upon this claim by failing to present it to the trial court in the motion for new trial or in the post-conviction litigation. Petitioner's failure to present the claim to the Missouri state courts constitutes default that precludes state and federal court review. *Sweet v. Delo*, 125 F.3d at 1149-50. Petitioner declines to plead good cause and actual prejudice to overcome his default. Federal court review of this claim is barred.

Furthermore, petitioner is requesting the court to create and apply a new rule of constitutional law retroactively in violation of the non-retroactivity principles of *Teague v. Lane, supra*. This issue was recently considered by the court of appeals, and the court of appeals correctly determined that its review of such a claim was barred by the *Teague* doctrine. *Nunley v. Luebbers*, 394 F.3d 1079 (8th Cir. 2005). In particular, the Supreme Court determined that review of this type of claim was barred under the non-retroactivity principles of *Teague* and its decision in *Schriro v. Summerlin*, 124 S.Ct. 2519 (2004).

In any event, this claim is meritless. At petitioner's trial, the jury found that 1) petitioner was convicted of assault in the second degree; 2) petitioner was convicted of offering to commit violence to an officer; 3) the murder of the victim was committed while petitioner was engaged in the perpetration of kidnaping or while petitioner was aiding others in perpetrating the same; and 4) the murder of the victim was committed while petitioner was engaged in the perpetration of robbery. The jury found the

existence of statutory aggravating circumstances and returned its verdict of capital punishment. Petitioner cannot demonstrate the violation of his rights under the Sixth Amendment.

## XVII, XVIII, XXI & XXII

Petitioner's seventeenth and eighteenth grounds for relief are contentions that petitioner received ineffective assistance of trial counsel. Petitioner contends counsel was ineffective because counsel did not allow petitioner to testify and counsel did not call Dr. Logan to discuss petitioner's mental disease or defect. The Rule 29.15 trial court found these claims were meritless due to petitioner's failure to prove the claims. These determinations are reasonable ones that are entitled to deference under § 2254(d).

Furthermore, petitioner has procedurally defaulted these claims. From the denial of post-conviction relief, petitioner appealed. However, he did not include these issues on post-conviction appeal. Petitioner's failure to brief these issues on post-conviction appeal constitutes default that precludes state and federal court review. *Sweet v. Delo*, 125 F.3d at 1149-50. For federal court review of these claims to occur, petitioner must allege and demonstrate good cause and actual prejudice under *Murray v. Carrier, supra*. Petitioner declines to do so in his petition.

Similarly, federal court review of claims 21 and 22 are barred. Each claim is a claim that petitioner received ineffective assistance of direct appeal counsel. Petitioner's 21st ground for relief contends that he received ineffective assistance of direct appeal counsel because counsel did not brief specifics concerning an alleged trial court error in the admission of Defense Exhibits 189 and 201-465. Petitioner did not plead this claim sufficiently to the Rule 29.15 trial court and the motion court denied relief on that basis. The failure to plead a post-conviction claim sufficiently constitutes procedural

31

default that precludes state and federal court review of the claim. *Smith v. Groose*, 998 F.2d 1439, 1441 (8th Cir. 1993). For federal court review of the claim to occur, petitioner must demonstrate good cause and actual prejudice under *Murray*.

Petitioner's 21st and 22nd claim also suffer from a common procedural default. From the denial of relief on Grounds 21 and 22, petitioner did not brief these claims on post-conviction appeal. Petitioner's failure to brief these issues on post-conviction appeal constitutes default that precludes state and federal court review. *Sweet v. Delo*, 125 F.3d at 1149-50. For federal court review of these claims to occur, petitioner must demonstrate good cause and actual prejudice under *Murray v. Carrier*. Petitioner declines to do so in his petition. Petitioner has defaulted upon Grounds 17, 18, 21 and 22.

XIX.

Petitioner's nineteenth ground for relief is a contention that he received ineffective assistance of trial counsel because trial counsel did not object to the prosecutor's closing argument. Petitioner contends that counsel should have objected to the prosecutor's closing argument that the jury should not consider mental disease or defect.

The Rule 29.15 trial court considered petitioner's claim and found it meritless when the prosecutor's argument was considered in context as made during closing argument. The determination by the Rule 29.15 court is reasonable and entitled to deference under § 2254(d). The determination was made with the legal standard of *Strickland v. Washington*, 466 U.S. 668 (1984) in mind. The application of the *Strickland* standard is reasonable and entitled to deference.

32

The Missouri Supreme Court also considered petitioner's claim and found it meritless on post-conviction appeal. *Nicklasson v. State*, 105 S.W.3d 482 (Mo. banc 2003). The Missouri Supreme Court looked to the entire context of the challenged statement. *Id*. at 484. "The jury must still determine, considering all the evidence, whether that mental disease or defect prevented the defendant from forming the requisite mental state at the time of the offense. The challenged statements represent nothing more than an acknowledgment of this fact, and a commentary on the strength of the deliberation evidence submitted at trial." *Nicklasson v. State*, 105 S.W.3d at 485. Considering the argument in context, the Missouri Supreme Court noted that the prosecutor was not misdirecting the jury, "but simply commenting that the evidence of mental disease or defect is not necessarily determinative." *Id*. The argument "merely advised the jury that in accordance with the diminished capacity instruction, evidence suggesting that [petitioner] suffered from a mental disease or defect is just one consideration that must be taken into account in determining whether Nicklasson acted with the requisite state of mind." *Id*. The Missouri Supreme Court reasonably determined that petitioner did not receive ineffective assistance of counsel. The Missouri Supreme Court made its decision with the *Strickland* standard in mind. *Id*. at 483-84. The Missouri Supreme Court's determination that the statement was proper under state law is entitled to deference, even in the context of resolving the federal constitutional issue since the underlying claim is an issue of state law. See *Williams v. Armontrout*, 877 F.2d 1376, 1383 (8th Cir. 1989), *cert. denied*, 493 U.S. 1082 (1990).

XX.

Petitioner's twentieth ground for relief is a contention that he received ineffective assistance of direct appeal counsel. Petitioner contends that direct appeal counsel should have briefed an issue on

Case 4:03-cv-08001-GAF   Document 32   Filed 04/26/05   Page 33 of 35

direct appeal concerning petitioner's being shackled during trial.  The Rule 29.15 trial court found this claim was meritless given that there were disturbances involving petitioner in confinement prior to trial and there was no evidence the jury saw or heard the shackles.

The Missouri Supreme Court also considered this claim on post-conviction appeal.  The Missouri Supreme Court considered the facts of petitioner's case and found that the use of restraints was proper.  *Nicklasson v. State*, 105 S.W.3d at 486-87.  This determination by the Missouri Supreme Court is reasonable and entitled to deference under § 2254(d).  The record shows that paper was put up around defense counsel's table, so that the leg restraints could not be seen.  The record also shows that petitioner was not wearing handcuffs.  Petitioner was charged with one count of first degree murder, to which he had confessed, which was a part of a multi-state crime spree in which petitioner admittedly murdered two other people in Arizona and shot at others in a strip mall in California.  Petitioner had prior convictions for assault in the second degree and "offering to commit violence" against a corrections officer for striking a guard at the Moberly Correctional Center.  While awaiting trial for this offense, petitioner had assaulted security personnel at the Clay County Jail and allegedly had also broken a television in the jail, taken the antenna and threatened to kill someone.  Petitioner's pervasive history of violent behavior, including that when in custody, demonstrates that the court was well within its discretion in ordering the limited restraint that it did in this case.

Case 4:03-cv-08001-GAF   Document 32   Filed 04/26/05   Page 34 of 35

WHEREFORE, for the reasons herein stated, petitioner's Petition for Writ of Habeas Corpus

Pursuant to 28 U.S.C. § 2254 is denied.

/s/ Gary A. Fenner
GARY A. FENNER, JUDGE
 United States District Court

DATED:    April 26, 2005